UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT T. COLLINS,<br><br>Plaintiff,<br>v.<br><br>CLALLAM COUNTY et al.,<br><br>Defendants. | CASE NO. 3:26-cv-05576-DGE<br><br>ORDER GRANTING COUNTY DEFENDANTS' MOTION TO DISMISS (DKT. NO. 8) |

Before the Court is a motion to dismiss filed by Defendants Clallam County, Nicole Chaney, and Alesha Mellott[1] ("County Defendants"). (Dkt. No. 8.) For the reasons that follow, County Defendants' motion is GRANTED.

[1] In their reply, County Defendants argue Mellott should separately be dismissed as a defendant pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(5) because she has not been properly served. (Dkt. No. 16 at 2 n.1; *see also* Dkt. No. 14 (service of summons for Mellott returned unexecuted).) However, the service of summons indicates service was attempted on Mellott on June 17, 2026 (Dkt. No. 14)—before counsel for County Defendants entered their notice of appearance and before the motion to dismiss was filed. "Defendants can waive the defect of lack of personal jurisdiction [or insufficient service of process] by appearing generally without first challenging the defect in a preliminary motion . . . or in a responsive pleading[.]"

## I FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who is proceeding pro se, initiated this lawsuit on June 3, 2026. (Dkt. No. 4.) He alleges on March 6, 2026, he was "peacefully and lawfully conducting civic business at a public clerk help window" at the Clallam County Courthouse. (*Id.* at 3.) Plaintiff elaborates that the day before, on March 5, 2026, he went to an unspecified hearing at the courthouse, where he requested a new hearing date and ordered a CD of "previous litigation." (*Id.* at 4.) On March 6, Plaintiff returned to the courthouse to pick up the CD. (*Id.*) Plaintiff asked Mellott, a court clerk, about the CD's contents and Mellott's response was "extremely rude." (*Id.*) Plaintiff alleges Chaney, another court clerk, was "[i]ncensed" by Plaintiff's "calm, constitutionally protected speech and inquiries" and so she "fabricated a false allegation of 'cussing and yelling'" to engage a private security guard, whom Plaintiff identifies as Defendant Victoria Schenck. (*Id.* at 3) (emphasis omitted). Schenck apparently "executed the retaliatory directives" of Chaney by summoning Defendant Kapetan and "seizing and escorting" Plaintiff off the courthouse property, even though Schenck herself did not witness the interactions between Plaintiff and Mellott and/or Chaney. (*Id.* at 3, 10.) Plaintiff states he was "perp walked through the building" in a "humiliating fashion." (*Id.* at 6) (emphasis omitted). Plaintiff states he was banned from the courthouse for one day. (*Id.* at 9.) Plaintiff states the entire incident was captured on video surveillance and his own audio recording. (*Id.* at 3.) Plaintiff alleges he was called a "'known harasser" with a reputation at the courthouse. (*Id.* at 11.) He contends these statements, prepared in "Site Reports" by Schenck and Kapetan, were "knowingly false and fabricated for the express

---

*Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (citations omitted). Because the lack of proper service on Mellott was not raised in County Defendants' initial motion to dismiss, the Court concludes this defense has been waived. Fed. R. Civ. P. 12(h)(1)(B).

purpose of retaliation over providing wrong information regarding public records and justifying unlawful removal and damaging [Plaintiff's] public standing." (*Id.* at 6, 11) (emphasis omitted).

Plaintiff brings causes of action under 42 U.S.C. § 1983 for First Amendment retaliation, violation of the Fourth Amendment, and violation of his procedural Due Process rights under the Fourteenth Amendment. (*Id.* at 14–15.) Plaintiff also brings various state law claims, including libel/slander under Washington Revised Code § 4.36.120; "Official Misconduct" under Washington Revised Code § 9A.80.010; harassment and stalking under Washington Revised Code §§ 7.105.010 and § 9A.46.110; and violations of several sections of the Washington constitution. (*Id.* at 15–16.) He requests $5 million in damages in addition to injunctive relief. (*Id.* at 17.)

In their motion, County Defendants assert several reasons why Plaintiff's complaint is deficient. First, they argue Plaintiff failed to plead any personal involvement by Chaney or Mellott in a violation of his constitutional rights. (Dkt. No. 8 at 3–4.) County Defendants further argue Chaney and Mellott are protected by qualified immunity and Plaintiff "points to no clearly established law sufficient to deprive Chaney or Mellott of qualified immunity[.]" (*Id.* at 7–9.) As to the county itself, County Defendants argue Plaintiff's attempts to circumvent the fact Clallam County is not an individual for purposes of § 1983 are unavailing. (*Id.* at 9–10.) Finally, County Defendants argue Plaintiff's state law claims fail because they are either criminal statutes that he does not have standing to enforce or because they are precluded from judicial enforcement because there is no recognized private right of action. (*Id.* at 11–13.) The matter is now fully briefed and ripe for disposition. (Dkt. Nos. 15, 16.)

## II LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The court need not, however, accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (internal citation omitted).

## III DISCUSSION

### A. § 1983 Claims Against Chaney and Mellott

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To prevail on his § 1983 claims against Defendants, Plaintiff must prove two essential elements: (1) "that a right secured

by the Constitution or laws of the United States was violated," and (2) "that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Liability under § 1983 is "established by showing that the defendant personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur." *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). Put differently, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the [complained of] deprivation[.]" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743–744.

"In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). "When a defendant asserts qualified immunity in a motion to dismiss under Rule 12(b)(6), 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" *Chavez v. Wynar*, 421 F. Supp.

3d 891, 898–899 (N.D. Cal. 2019) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

"'Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case.'" *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 698 (9th Cir. 2010) (citations omitted). For a right to be clearly established, "'its contours must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right.'" *Id.* (citation omitted). The Court may exercise discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. In the motion to dismiss context, the Ninth Circuit has held if the operative complaint "'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (citation omitted).

1. First Amendment Retaliation

To prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). A plaintiff must prove the defendant's "desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir.

2006) *abrogated on other grounds by Ballentine v. Tucker*, 28 F.4th 54, 64–65 (9th Cir. 2022). A plaintiff shows this intent by "alleg[ing] discrete acts of . . . intimidation directly solely at silencing them." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). "Once a plaintiff has made such a showing, the burden shifts to the government to show it 'would have taken the same action even in the absence of the protected conduct.'" *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Plaintiff alleges he was engaging in his constitutionally protected (1) right to petition; (2) right to speak with court clerks regarding court records, and (3) right to verbally challenge government officials absent physical threats or creating a disruption. (Dkt. Nos. 4 at 5, 10, 14; 15 at 3–4; 8.) Plaintiff states the adverse action he was subject to was "detaining then ordering [his] ejection, physically escorting [him] out, banning for the day, and threatening police arrest." (Dkt. No. 4 at 14.)

The Court, for the following reasons, determines (1) Plaintiff has not alleged Mellott personally participated in any constitutional violation and (2) while Plaintiff sufficiently alleged Chaney's actions set into motion unconstitutional retaliation against Plaintiff's right to verbally challenge government officials, qualified immunity bars Plaintiff's claims against Chaney.

a. <u>Personal participation.</u>

County Defendants argue Plaintiff's § 1983 claims fail because he does not allege Chaney or Melott personally participated in any purported constitutional violation. (Dkt. No. 8 at 3–4.) As to Mellott, County Defendants point out the only actions Mellott apparently engaged in were "act[ing] rudely and provid[ing] poor customer service[,]" which do not amount to a First Amendment retaliation claim. (Dkt. No. 16 at 1.) As to Chaney, County Defendants state summoning a security guard is insufficient to support a claim. (Dkt. No. 8 at 4.) Plaintiff

argues, in conclusory fashion, County Defendants "'acted' and 'moved' in a way that would chill or silence a person of ordinary firmness from future First Amendment activities and that their personal desire to cause the chilling effect was the but-for cause of their actions[.]" (Dkt. No. 15 at 4.)

The Court agrees with County Defendants that Plaintiff has not sufficiently alleged Mellott personally participated in any constitutional deprivation. Plaintiff's complaint does not identify any retaliatory action taken by Mellott. Acting "extremely rude" is insufficient to state a claim of First Amendment retaliation. (Dkt. No. 4 at 4.)

As to Chaney, the Court disagrees with County Defendants. Plaintiff states Chaney, "incensed by [his] calm, constitutionally protected speech and inquiries, fabricated a false allegation of 'cussing and yelling' to summon a private security guard." (*Id.* at 3) (emphasis omitted). Chaney did not directly participate in any constitutional deprivation by simply summoning a security guard. Whether Chaney set into "motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury" is a closer call. *See Johnson*, 588 F.2d at 743–744. Chaney may have summoned Schenck to help resolve any misunderstanding between Plaintiff and Mellott regarding Plaintiff's questions. It is also possible Chaney reasonably misunderstood the conversation between Plaintiff and Mellott to be one in which Plaintiff created a disturbance or safety risk, which would lawfully merit security intervention. Still possible, Chaney may have summoned Schenck to remove Plaintiff from this courthouse because of the content of his speech. As the Court walks through in its below analysis, removing someone from a courthouse because of their constitutionally protected speech inflicts constitutional injury.

At this motion to dismiss stage, the Court must resolve all reasonable inferences in Plaintiff's favor. Thus, Plaintiff has put forth sufficient facts demonstrating Chaney set into motion Schenck's actions, knowing or reasonably knowing Schenck's actions would violate Plaintiff's constitutional rights.

b. Protected activity.

Plaintiff has also put forth sufficient facts in his complaint that he was engaging in protected First Amendment activity.

Plaintiff asserts Defendants' actions interfered with his constitutional right to speak with court clerks regarding court records. (Dkt. Nos. 4 at 5; 15 at 4.) There is no such constitutional right. Generously interpreting Plaintiff's statements at this motion to dismiss stage, this Court interprets Plaintiff to be asserting his right to access the courts, which is how Plaintiff characterizes his rights in his reply motion. (Dkt. No. 15 at 9.)

The right to petition does generally include the right to access courts. *See, e.g.*, *Borough of Duryea, PA v. Guarnieri*, 564 U.S. 379, 387 (2011)*; Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896–897 (1984); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).[2] However, this right is ancillary to the underlying claim. *Christopher*, 536 U.S. at 415. Claims for deprivation of the constitutional right of access to courts must allege both: (1) the underlying cause of action, whether anticipated or lost, and (2) official acts frustrating litigation. *Id.* Here, Plaintiff has not provided any information about his underlying cause of action other than he was seeking a CD of "previous litigation." (Dkt. No. 4 at 4.) This is not enough to state a claim that County

---

[2] The Supreme Court has recognized a constitutional right of access to courts but the basis of the constitutional right of access to courts has remained unsettled. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002). The First Amendment right to petition is a potential source. *Id.*

Defendants unconstitutionally interfered with Plaintiff's access-to-courts. Further, while there is a First Amendment right to inspect and copy public records, the right does not guarantee *immediate* and unlimited access to those records. *See In re Copley Press, Inc.*, 518 F.3d 1022, 1028–1029 (9th Cir. 2008); *Pullman v. Schwarzenegger*, 2011 WL 6396631, slip op. at *5 (S.D. Cal. 2011).

Last, Plaintiff asserts his right to petition and "right to verbally challenge government officials absent physical threats or creating a disruption." (Dkt. No. 15 at 8.) Plaintiff states he verbally challenged Chaney and Mellott in their responses to his questions regarding the CD without creating a disruption. (Dkt No. 4 at 4.) He states he "was peacefully and lawfully conducting civic business." (*Id.* at 3.)

Generally, there is a First Amendment protected right to challenge government officials under the right to petition the government to redress grievances. *See Borough of Duryea*, 564 U.S. at 388 ("the right to petition is generally concerned with expression directed to the government seeking redress of a grievance" and "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives"). At the same time, in assessing First Amendment claims related to speech on government property, if the nature of the government property is nonpublic, the government may restrict speech "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983). "The Government's decision to restrict access to a nonpublic forum need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. & Educ. Fund Inc.*, 473 U.S. 788, 808 (1985) (emphasis in original). The Supreme Court has made clear "[p]ublicly owned or operated property does not become a 'public

forum' simply because members of the public are permitted to come and go at will." *United States v. Grace*, 461 U.S. 171, 177–178 (1983). A county courthouse is a non-public forum. *Sammartano v. First Jud. Dist. Court, in & for Cnty. of Carson City*, 303 F.3d 959, 965–966 (9th Cir. 2002); *see also Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("The lobby of the courthouse is not a traditional public forum or a designated public forum, not a place open to the public for the presentation of views.").

Taking Plaintiff's factual allegations as true and drawing all reasonable inferences in his favor, his persistent questions regarding the CD could be viewed as expressing concerns to the government and are thus protected activity. If the courthouse removed someone who created a disturbance, these actions may be lawful if the policy restricting speech for those who become disturbances is reasonable and viewpoint neutral. *See Matter of Jordan*, Case No. 2:23-mc-00154-PSG, 2023 WL 12056750, at *5 (C.D. Cal. 2023) (collecting cases in which court access limitations for individuals who engage in abusive and disruptive conduct were held lawful). For example, in a recent case in this district, the Court held the plaintiff did not establish a First Amendment retaliation claim when he requested to file a complaint in a courthouse, a court employee referred him to file the complaint online, and then the court employee summoned law enforcement to assist when the plaintiff took issue. *Lafferty v. Gurr*, Case No. C26-0234-JCC, 2026 WL 2083251, at *2 (W.D. Wash. July 20, 2026). There, taking issue meant the plaintiff escalated to the point where the court employee had safety concerns. *Lafferty*, Case No. C26-0234-JCC, Dkt. No. 36 at 3 (W.D. Wash. 2026). But here, Plaintiff states he did not create any disturbance, so even if a policy existed permitting law enforcement to get involved when there was a disturbance in the courthouse, it would be inapplicable based on Plaintiff's allegations.

(*See* Dkt. No. 4 at 6.) Plaintiff has sufficiently alleged he was engaging in his right to express concerns to the government, which falls under the First Amendment right to petition.

c. <u>Adverse action.</u>

Next, Plaintiff has identified an adverse action that would "chill or silence a person of ordinary firmness from future First Amendment activities": removal from the courthouse and threatening to call "the deputies." *See Blair*, 608 F.3d at 543; Dkt. No. 4 at 3, 5. Being escorted outside of the courthouse and banned for a day is enough to chill someone from exercising their First Amendment right. Moreover, "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis in original); *see also White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)) ("Informal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also."). It makes no difference that Plaintiff continued to speak while he was being removed. The chilling analysis depends on the reaction of a "person of ordinary firmness," not the individual plaintiff's reaction. *See Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1054–1055 (9th Cir. 2019). Plaintiff has sufficiently alleged he suffered an adverse action as removal from the courthouse for one day is enough to chill someone of ordinary firmness from exercising their First Amendment rights.

d. <u>Substantial causal relationship between the constitutionally protected activity and the adverse action.</u>

Plaintiff has also met his burden at the motion to dismiss stage to allege "there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *See Blair*, 608 F.3d at 543. Plaintiff states Chaney summoned Schenck "disliking the content of [Plaintiff's] inquiries." (Dkt. No. 4 at 10.)

In considering a case with nearly identical facts, the Central District of California found the court employee intended to chill speech. *Price v. Peerson*, Case No. CV 13-3390 PSG (JEMx), 2013 WL 12140472, at * 9 (C.D. Cal. Nov. 22, 2013). There, Price alleged he visited a federal courthouse and "respectfully inquired" to a security guard regarding the courthouse's policy requiring visitors to remove shoes before entering. *Id.* at *1. The security guard then summoned other guards. *Id.* The other guards seized Price, questioned him in a waiting room, then ejected him from the courthouse. *Id.* The *Price* court reasoned:

> Because the Court must accept as true Plaintiff's repeated claim that he had not created any disturbance whatsoever, . . . it necessarily follows that Defendant intended to retaliate against Plaintiff. The Court cannot imagine any other veritable, or even plausible, reason for Defendant's conduct. How could there be any legitimate law enforcement objective in reporting Plaintiff as a "disturbance," and then ejecting Plaintiff from the courthouse, for simply asking a question about a courthouse security procedure?

*Id.* at *10.

Here too, taking Plaintiff's claims that he did not create a disturbance and Chaney "disliked the content of his speech" as true, this Court must believe the reason for summoning a security guard for simply questioning court clerks about the CD's contents is meant to chill such questions. Plaintiff has thus stated a claim of First Amendment retaliation.

e. <u>Qualified immunity.</u>

Qualified immunity, however, defeats Plaintiff's claims at this stage. County Defendants succeed at demonstrating the right is not clearly established "in light of the specific context of the case." *See Krainski*, 616 F.3d at 968 (citation omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation modified). The Supreme Court has repeatedly counseled against using a high degree of generality to define

clearly established law. *Id.* at 12; *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The "high standard is intended to give officers breathing room 'to make reasonable but mistaken judgments about open legal questions.'" *Ioane v. Hodges*, 939 F.3d 948, 956 (9th Cir. 2018) (quoting *Ashcroft*, 563 U.S. at 743.

Here, there is no binding precedent on these facts. The cases Plaintiff cites are all distinguishable as they pertain to First Amendment rights from retaliation at a higher level of generality. Plaintiff cites *Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013) for the proposition that "a citizen has a fundamental right to access a Courthouse to conduct legal business and access records." (Dkt. No. 15 at 9) (emphasis omitted). *Ford* is not about First Amendment rights within a courthouse: it instead is about First Amendment rights during a police traffic stop. *Ford*, 706 F.3d at 1190–1191. Additionally, *Ford* has since been abrogated by *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). Plaintiff also cites *Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013) to demonstrate "the line between 'disruption' and 'protected speech' in a limited public forum." (Dkt. No. 15 at 9.) Again, this case is about an entirely different context: First Amendment rights at a city council meeting. *Acosta*, 718 F.3d at 806–807. Though *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002) is indeed within the courthouse setting (*see* Dkt. 15 at 9), it holds a courthouse policy prohibiting clothing bearing symbols of motorcycle organizations is unconstitutional as it is unreasonable and not viewpoint neutral. *Sammartano*, 303 F.3d at 970. Wearing a symbol to a courthouse cannot be equated to questioning courthouse staff for the level of specificity that the "clearly established" inquiry requires. This Court need not review each of Plaintiff's numerous citations as Plaintiff cites no precedent that is binding for the specific facts at hand.

Thus, while it is clearly established at a higher level of generality that Plaintiff has a First Amendment right to calmly question government officials through exercising his right to petition, it is not clearly established law in the specific context of this case whether a court clerk summoning a security guard in observing a citizen calmly question a colleague would unconstitutionally chill these rights. Qualified immunity requires dismissing Plaintiff's First Amendment retaliation claim against Chaney.

2. <u>Fourth Amendment Violation</u>

County Defendants argue Plaintiff does not allege Chaney or Mellott seized him or used any force against him for purposes of a Fourth Amendment claim; instead, according to County Defendants, Plaintiff was merely ejected from the courthouse. (Dkt. No. 8 at 5.) Plaintiff offers no argument in opposition to this assertion. (*See generally* Dkt. No. 15.)

A Fourth Amendment seizure occurs "when, taking into account all of the circumstances surrounding the encounter, the [state actor's] conduct would have communicated to a reasonable person that he was not at liberty to ignore the [state actor's] presence and go about his business." *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) (citation modified). In other words, there is no seizure under the Fourth Amendment unless "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (citation omitted).

Here, Plaintiff alleges Chaney and Mellott engaged in joint action with Schenck to remove him from the courthouse, and Schenck's "aggressive commands combined with an explicit threat of immediate arrest by deputies constituted a de facto seizure." (Dkt. No. 4 at 15.) He alleges the seizure was "without a warrant, reasonable suspicion, or probable cause." (*Id.*) But aside from stating Chaney and Mellott gave Schenck "fraudulent directives" (*id.*) to remove

him from the courthouse, i.e., instigating the "seizure" by Schenck, Plaintiff does not explain *how* Chaney and Mellott's actions communicated to him he was not free to leave or terminate the encounter on his own, nor that a reasonable person would feel the same. Plaintiff therefore fails to state a Fourth Amendment seizure claim against Chaney and Mellott.

3. Procedural Due Process Violation

Finally, County Defendants argue Plaintiff's "temporary removal" from the courthouse does not meet the stigma-plus standard because Chaney and Mellott did not alter his legal status or engage in conduct that constituted public disclosure of a stigmatizing statement. (Dkt. No. 8 at 5–7.) Similarly to his Fourth Amendment claim, Plaintiff offers no rebuttal to County Defendants' arguments in favor of dismissal of his Fourteenth Amendment claim. (*See generally* Dkt. No. 15.)

Plaintiff's allegations cannot support a stigma-plus Fourteenth Amendment claim. Stating a stigma-plus due process claim requires a plaintiff to show "(1) the public disclosure of a stigmatizing statement by the government; (2) the accuracy of which is contested; (3) *plus* the denial of some more tangible interest such as employment." *Chaudhry v. Aragón*, 68 F.4th 1161, 1170–1171 (9th Cir. 2023) (citation modified). "The 'plus' must be a deprivation of liberty or property by the state that directly affects the plaintiff's rights." *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004). County Defendants correctly state Plaintiff has not identified any "public disclosure" of the allegedly stigmatizing statements as they are not sufficiently public to the community at large. *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1274 (D. Or. 2014) (quoting *Palka v. Shelton,* 623 F.3d 447, 454 (7th Cir. 2010)) (proving public disclosure requires the defendant "actually disseminate the stigmatizing comments in a way that would reach . . . the community at large"). Disclosures between government agencies are insufficient. *See Wenger v.*

*Monroe*, 282 F.3d 1068, 1074 n.5 (9th Cir. 2002). Plaintiff alleges false allegations in the site reports were disseminated to the "entirety of Clallam County." (Dkt. No. 4 at 15) (emphasis omitted). However, he cites no facts beyond these conclusory statements to support this claim. Moreover, Plaintiff states Schenck and Kapetan, rather than County Defendants, were the authors of the false incident reports. (*Id.* at 10.) Lastly, County Defendants are correct that Plaintiff has failed to identify how his liberty interests were implicated by the allegedly stigmatizing statements or resulted in a change in his legal status. (Dkt. No. 8 at 6–7.) This Court dismisses Plaintiff's Fourteenth Amendment stigma-plus due process claim for failing to allege sufficient facts in support.

**B. § 1983 Claims Against Clallam County**

"A government entity may not be held liable under § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "To allege municipal liability under 42 U.S.C. § 1983, a plaintiff must plead 'that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation.'" *Hickman v. City of Pasco*, Case No. 4:26-CV-05012-RLP, 2026 WL 1873693, at *2 (E.D. Wash. June 29, 2026) (quoting *Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020)).

Plaintiff alleges Clallam County ratified a violation of constitutional rights by failing to correct or purge false site reports. (Dkt. No. 4 at 16.) Plaintiff has not allegedly sufficient facts to identify a constitutional violation based on any site reports completed by court staff.

Plaintiff then raises two additional paths to municipal liability in his response motion. First, he states Clallam County failed to train Chaney and Mellott because (1) Chaney and Mellott provided inaccurate information in response to Plaintiff's request for information and (2) the summoning of a security guard implies court clerks were not trained to avoid violating court visitors' First Amendment rights. (Dkt. No. 15 at 13, 21.) Second, he states Clallam County "maintained an unconstitutional custom or policy wherein private security contractors were permitted to weaponize the coercive power of the state to eject citizens from a public forum based entirely on unverified, subjective complaints." (*Id.* at 21.)

Again, Plaintiff's alternative paths to municipal liability fail to state a claim. On Plaintiff's failure to train allegations, Plaintiff has not sufficiently alleged how providing inaccurate information caused a deprivation of his rights. Nor has he identified how failing to train Chaney on Mellott on whether to summon a security guard amounted to deliberate indifference to his unconstitutional rights. Lastly, Plaintiff has not identified that Clallam County had such a custom or policy to eject citizens from a courthouse. Single incidents are typically insufficient to support a *Monell* claim. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ( "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). Moreover, as discussed above, a courthouse is a non-public forum and "there is no constitutionally protected liberty interest in unrestricted access to a courthouse." *See Schultz v. San Joaquin Cnty. Sheriff's Dep't*, No. 2:19-CV-02468-DAD-KJN, 2024 WL 35992, at *6 (E.D. Cal. Jan. 3, 2024) (collecting cases), *appeal dismissed*, 2024 WL 5397243 (9th Cir. Aug. 13, 2024).

As Plaintiff has not identified any viable path to *Monell* liability, this Court dismisses Plaintiff's § 1983 claims against Clallam County.

**C. State Law Claims**

County Defendants leverage two arguments for why Plaintiff's state law claims fail. First, he "cites a number of criminal statutes that do not create a private cause of action for damages and that he does not have standing to enforce as a private citizen." (Dkt. No. 8 at 11.) Second, "[t]he remainder of his state law claims arise out of purported violations of the Washington State Constitution," which do not include private causes of action in the absence of legislation. (*Id.*)

1. State Criminal Statutes

Plaintiff alleges violations of Washington Revised Code § 9A.80.010 for misdemeanor official misconduct and Washington Revised Code §§ 7.105.010[3] and 9A.46.110 for stalking and harassment. (Dkt. No. 4 at 16.) Plaintiff does not have standing to enforce Washington criminal statutes in this Court, a power reserved for state prosecuting authorities in state courts. *See* Wash. Crim. R. Ct. Ltd. J. 2.1.

2. State Constitutional Violations

Plaintiff also alleges violations of Article I, sections 3, 4, and 5 of the Washington Constitution. (Dkt. No. 4 at 16.) Violations of the Washington Constitution do not include a private cause of action without action from the Washington Legislature. *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. App. Ct. 2001). The Washington Legislature has not created a private right of action for money damages for any of the state constitutional provisions

[3] § 7.105.010 provides the definitions for the civil protection orders section of the Washington Revised Code.

Plaintiff alleged Defendants violated. *See, e.g.*, *Sys. Amusement, Inc. v. Washington*, 500 P.2d 1253, 1255 (Wash. App. Ct. 1972) ("Acts violative of [Article I, section 3] may be declared void by the courts, but the clause does not, of itself, provide the remedy of reparation."); *Blinka*, 36 P.3d at 1102 (declining to create a state constitutional tort for Article I, section 5 without legislative guidance). As Washington state courts do not recognize implied rights of action for constitutional provisions, nor will this Court. Plaintiff's alleged violation of Article I, sections 3, 4, and 5 of the Washington Constitution must be dismissed.

3. State Torts

In Plaintiff's response, he states County Defendant's motion to dismiss arguments do not address his state tort claims of "stalking and harassment." (Dkt. No. 15 at 18.) However, Plaintiff's complaint does not allege any of the County Defendants committed harassment or stalking. (Dkt. No. 4 at 16.) As to the "inconvenience" tort under Washington Revised Code § 4.56.250 which Plaintiff alleges (*id.*), "inconvenience" is not a standalone tort but rather a factor considered when awarding noneconomic damages for those who prove a baseline tort. Wash. Rev. Code § 4.56.250.

Similarly, Plaintiff has failed to allege sufficient facts to support a state defamation tort claim. Plaintiff, in a conclusory manner, states Defendants, including Chaney and Mellott, "acted with intent and Actual Malice by disseminating via verbally and "Site Reports" false allegations to the entirety of Clallam County" in violation of Washington Revised Code § 4.36.120. (Dkt. No. 4 at 15) (emphasis omitted). The elements of a cause of action for defamation in Washington are (1) a false statement; (2) lack of privilege; (3) fault; and (4) damages. *Herron v. KING Broadcasting Co.*, 776 P.2d 98, 101 (Wash. 1989). As to Mellott, Plaintiff has not identified any false statement. As to Chaney, Plaintiff states Chaney "fabricated

a false allegation of 'cussing and yelling.'" (Dkt. No. 4 at 3.) However, it is unclear if Chaney used these words as Plaintiff later attributes the assertions of "cussing and yelling" to Schenck and Kapetan. (*Id.* at 10.) Without including the exact words Chaney allegedly used, Plaintiff has failed to state a claim for defamation against Chaney.

This court thus dismisses any state tort claims against County Defendants.

### D. Leave to Amend

The Ninth Circuit has instructed that while district courts should generally grant leave to amend, even if no request is made, a district court does not have to do so if it determines the pleadings could not possibly be cured by the allegation of other facts. *See Lopez v. Smith*, 203 F.3d 1122, 1127, 1129 (9th Cir. 2000) (en banc); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (holding a district court does not err in denying leave to amend if amendment would be futile).

Here, this Court finds Plaintiff should be granted leave to amend to attempt to cure the deficiencies identified above.

## IV CONCLUSION

Accordingly, and having considered County Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that County Defendants' Motion to Dismiss is GRANTED. Plaintiff's claims against Defendant's Clallam County, Nicole Chaney, and Alesha Mellott are DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend to address the deficiencies identified herein. Plaintiff may file an amended complaint no later than **November 16, 2026.**

The Clerk is directed to Calendar this event.

Dated this 16th day of October, 2026.

David G. Estudillo
United States District Judge